UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>                              Plaintiff,<br><br>     -v-<br><br>UWE MUELLER,<br><br>                              Defendant. | Case No. 14-CV-9221 (KMK) |

<u>DECLARATION OF DR. ERNESTO LOH</u>

I, Dr. Ernesto Loh, hereby declare as follows:

  1. I am a partner in the law firm LOH Rechtsanwälte, a German law firm with offices in Berlin and Frankfurt/Main. I received my doctoral degree in law in 1972 and have been a partner in LOH Rechtsanwälte since July 2000. My practice areas include, among other things, labor and employment law and general civil law. This declaration is based on my personal knowledge, except where otherwise indicated.

  2. I submit this declaration in support of defendant Uwe Mueller's motion to dismiss the complaint filed by plaintiff IBM Corporation ("IBM").

  3. I understand that IBM alleges in its complaint that Mr. Mueller, a German citizen who worked for a German subsidiary of IBM in Munich, Germany, forfeited the monetary value of certain equity awards granted to him under the IBM 2001 Long-Term Performance Plan (the "IBM Plan") because he engaged in "detrimental activity" within the meaning of the IBM Plan by rendering services to a business which is allegedly competitive with IBM following the termination of his employment.

4. The noncompetition restriction in the IBM Plan that IBM seeks to enforce is invalid and unenforceable under German law, and violates a fundamental public policy of Germany because, among other reasons, the requirements of section 74 para. 2 of the German Commercial Code (HGB), which mandates that an employer must pay a former employee 50% of his previous contractual remuneration during the term of the restriction, have not been satisfied.

5. On August 27, 2002 Mr. Mueller entered into an employment agreement contract with PricewaterhouseCoopers Unternehmensberatung GmbH, a limited liability company under German Law, residing in Frankfurt/Main. PricewaterhouseCoopers Unternehmensberatung GmbH sold its business and operations to IBM. In connection therewith Mr. Mueller became an employee of a German subsidiary of IBM called IBM Deutschland GmbH. The employment agreement states in section 11:

> *Applicable Law.* This Employment Agreement is governed by the laws of the Federal Republic of Germany.
> Notwithstanding the foregoing, the Employer's stock option award and other equity-based plans will be governed by the laws of the State of New York.

6. As Mr. Eric J. Wallach pointed out correctly in his statement of August 12, 2015, and as noted above, the requirements of section 74 para. 2 of the German Commercial Code (HGB) have not been satisfied. According to the IBM Plan, Mr. Mueller's payment obligation to IBM is triggered if he renders services to a competitive business following the termination of his employment. Such payment obligation is designed to induce Mr. Mueller to refrain from engaging in any activity at a competitor following his termination. If, however, he refrains from any competitive activity to avoid the payment obligation to IBM, IBM would have succeeded in preventing post-contractual competition without having agreed to pay the mandatory compensation of 50% of Mr. Mueller's previous contractual remuneration as required by the

applicable provisions of the German Commercial Code (HGB). Thus, the restriction against competition in the IBM Plan is unlawful.

7. The payment obligation resulting from the noncompetition restriction in the IBM Plan is not only invalid under the provisions of the German HGB. It is also invalid because the payment obligation to IBM constitutes a restriction of Mr. Mueller's freedom to terminate his employment agreement at any time in accordance with the statutory or contractual time limits. According to German law, an employer is not permitted to hinder or interfere with an employee's freedom to terminate his employment by threatening financial sanctions if he exercises his right to terminate. The fact that such financial sanctions are indirectly referenced in the Employment Agreement is irrelevant. Also irrelevant is the fact that IBM might have a commercial interest to grant stock options only to those employees who will be engaged with the company in the future. Under no circumstances may such interest justify a commitment period of ten years, which is the case here where Mr. Mueller entered into his Employment Agreement in 2002 and departed IBM in 2012.

8. Moreover, the purpose of the granted stock options under the IBM Plan was in significant part to compensate Mr. Mueller for services rendered in the past. The German Federal Labor Court has consistently ruled that under no circumstances would it be justified for an employer to subsequently take away an employee's remuneration that had already been earned and paid (decision of the German Federal Labor Court of 24 October 2007, reference number 10 AZR 825/06). Thus, the non-compete restriction in the IBM Plan is unlawful because it purports to permit IBM to claw back compensation that was earned by Mr. Mueller and paid to him by IBM (Germany).

9. I am also advised that at a hearing before the Court, IBM's American lawyer argued that the above-referenced provisions of the German Commercial Code (HGB) and labor law principles did not apply to Mr. Mueller because of his status and/or position at IBM

(Germany). This is incorrect. These provisions and labor-law principles do not become inapplicable merely because Mr. Mueller held an executive position with a German subsidiary of IBM. Specifically, under German law there is a distinction between (i) employees and (ii) legal representatives/corporate officers ("Directors") who are registered with the commercial register (Handelsregister). Directors are not covered by employee protection laws because such persons are considered to be employers. Employees who are not Directors, however, are covered by employee protection laws, regardless of their title, their seniority within an organization and/or their income. Mr. Mueller was an employee and not a Director within the meaning of German law. A German limited liability company (Gesellschaft mit beschränkter Haftung) is represented by its "Geschäftsführer". Although the English translation of this word is "managing director" and Mr. Mueller held the title of "managing director," he was not a Geschäftsführer in the legal sense and was not registered as such in the commercial register (Handelsregister) nor was he a member of the board of directors of IBM Corporation or its affiliates in a managerial capacity. In other words, the German statutory non-compete prohibition referenced above applies directly to Mr. Mueller because he was not registered as the legal representative of the German subsidiary of IBM with a commercial register, and therefore as an employee remained covered by the applicable non-compete laws, notwithstanding his title. Accordingly, Mr. Mueller is not excluded from the coverage of the statutes described above and the provisions of the German Commercial Code (HGB) and German legal principles described herein are fully applicable to Mr. Mueller.

    I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct. Executed on August 11, 2016.

_____
Dr. Ernesto Loh